15 So.3d 614 (2009)
Javis REDDIX, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D09-49.
District Court of Appeal of Florida, Third District.
June 3, 2009.
Javis Reddix, in proper person.
Bill McCollum, Attorney General, and Richard L. Polin, Chief Assistant Attorney General, for appellee.
Before COPE, SHEPHERD, and SUAREZ, JJ.
SHEPHERD, J.
Defendant, Javis Reddix, appeals a trial court order denying his motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), arguing the trial court failed to secure from him a waiver of credit for time served on the incarcerative portion of his original split sentence after he violated the probationary portion of that sentence and was sent back to prison. Because there does not appear of record a clear showing of express waiver, as permitted by our case law, or other record evidence sufficient for us to conclude that Reddix accepted an offer he was aware would include such a waiver, we reverse the order on appeal and remand the case for further proceedings.

FACTS
On February 26, 2007, Reddix was adjudicated guilty in two cases and sentenced to two years in state prison followed by one year of probation. He served the incarcerative portion of his sentence and was released. Thereafter, an affidavit of violation of probation was filed against him for, inter alia, leaving Miami-Dade County without first seeking the permission of *615 his probation officer.[1] In discussions preceding Reddix's plea, the State noted that its offer was "five (5) years state prison with credit time served since the last time he was booked[,]" but that there was a "different court offer." After more discussion, Reddix ultimately chose to accept "the Court's offer[,]" which, to that point, had not been described on the record in any detail. Thereafter, the following exchange took place:
THE COURT: You can lower your hand. Tell me [your] full name, please, sir?
THE DEFENDANT: Javis Deon Reddix.
THE COURT: How old are you, sir?
THE DEFENDANT: Twenty-eight.
THE COURT: How far did you go in school?
THE DEFENDANT: Eleventh grade.
THE COURT: Tell me what you do for a living or what your last job was?
THE DEFENDANT: Construction labor pool.
THE COURT: Have you ever been treated for a mental illness?
THE DEFENDANT: No, sir.
THE COURT: Today, are you under the influence of any drugs, alcohol, or prescription medicine that might impair your ability to understand?
THE DEFENDANT: No, sir.
THE COURT: Has anyone made you any promises to get you to accept the plea offer other than the terms that have been announced on the record?
THE DEFENDANT: No, sir.
THE COURT: Has anyone threatened or forced you to accept these terms?
THE DEFENDANT: No, sir.
THE COURT: Have you had enough time to discuss [the terms] with your attorney?
THE DEFENDANT: Yes, sir.
THE COURT: Are you satisfied with your lawyer's assistance as counsel?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand if you prefer to have a right to have a probation violation hearing before this court on both cases? At the hearing it would be the State's obligation to prove to me, not to a jury, by a preponderance of the evidence the violation of probation[?]
THE DEFENDANT: Yes, sir.
THE COURT: You would have the right to bring in witnesses to testify, the right to confront or cross-examine the State's witnesses, the right to testify yourself or not testify, which would be your decision alone to make, and finally, the right to take an appeal to a higher court should I find you to be in violation of your probation in any regard. Do you understand that if I go ahead and accept your plea here today, then there will be no probation violation hearing, and you would give up the rights that I have just described?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand the maximum penalties that could have been imposed here if I found you to be in violation wereCan you tell me, Mr. Aroca, what he faced here?

*616 MR. AROCA [Assistant State Attorney]: Forty-one (41).
THE COURT: Forty-one (41) years in state prison all together. Do you understand, sir?
THE DEFENDANT: Yes, sir.
THE COURT: Are you admitting that you are the same Javis Reddix who was on probation in both of these cases and that you violated your probation by leaving Miami[-]Dade County without first getting the permission of your probation officer back on January 14th of 2008 by going to Broward County?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that by entering into the plea if you are not a U.S. Citizen, it is possible you could get deported?
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that by entering into a plea you give up your right to have your lawyer investigate or continue to investigate any physical evidence from these cases that might, through DNA testing demonstrate that you didn't commit the violation.
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand if you have any prior convictions for crimes that involve sexual violence or crimes that were sexually motivated, then it's possible that a plea on these cases could result in your indefinite involuntary civil commitment under the Jimmy Ryce Act?
THE DEFENDANT: Yes, sir.
THE COURT: Very well. The Court does find the defendant is alert and intelligent. He's made a knowing and voluntary plea, he has been assisted by competent counsel in whom he expressed his satisfaction, and he understands the nature and consequences of his plea.
Accordingly, I accept his admission of one of the violations alleged in each of these cases, that being leaving the county without getting permission. I'm going to revoke his probation in both cases. Sentence will be four (4) years state prison with all credit time served to which he is entitled since his booking date on these affidavits. That's the time he gets credit for.
MR. AROCA: Your honor, that's for the record verification, but taking the plea here means credit for time served only since the date he was booked on the violation of probation.
THE COURT: That is what I just said.
MR. AROCA: I'm getting motions from defendants.
THE COURT: So am I. They come in every day. My inbox has a stack of Rule 3 motions, and a lot of them are on this issue but I usually do explain to people and tell them the specific date from which they get CTS and that is the situation here as well.
CORRECTION OFFICER: You said four (4) years, right, judge?
THE COURT: Correct. With all CTS from 2/14/08 ... forward.
(emphasis added).

ANALYSIS
Absent: (1) clear record evidence of an express waiver of entitlement to credit time served by a defendant in his plea colloquy, see, e.g., Troutman v. State, 985 So.2d 1167 (Fla. 3d DCA 2008); Hines v. State, 906 So.2d 1137 (Fla. 3d DCA 2005); (2) clear record evidence revealing a defendant understood he was waiving the credit time served in question as part of his new sentence, see, e.g., Joyner v. State, *617 988 So.2d 670 (Fla. 3d DCA 2008); or (3) clear record evidence revealing that applying the credits to which a defendant now claims entitlement would lead to an absurd result clearly not within the contemplation of the parties at the time of sentencing, see, e.g., Rivera v. State, 954 So.2d 1216 (Fla. 3d DCA 2007);[2]Fulcher v. State, 875 So.2d 647 (Fla. 3d DCA 2004) (Cope, J., concurring), a defendant is entitled to credit for the time he served on the original split sentence. See Isaac v. State, 992 So.2d 304 (Fla. 3d DCA 2008); Brownlee v. State, 899 So.2d 341 (Fla. 3d DCA 2005); Cozza v. State, 756 So.2d 272 (Fla. 3d DCA 2000).
The record in this case clearly shows Reddix was never asked during his plea colloquy whether he consented to waive his credit for the two years he served on the incarcerative portion of his split sentence. The court only announced Reddix's waiver after it accepted his plea to the violation. In this respect, this case is factually analogous to Ryan v. State, 837 So.2d 1075, 1076 (Fla. 3d DCA 2003), where the court explained it was offering the defendant "two years [of youthful offender incarceration] followed by two years community control[]" but did not engage in any discussion of what credit the defendant was entitled to until after it pronounced sentence.
The only material difference between this case and Ryan is a statement by the State in this case that its offer was "five (5) years state prison with credit time served since the last time he was booked[,]" and that there was a "different court offer," which Reddix ultimately accepted. This Court has explained that "[a] plea agreement is a contract and the rules of contract law are applicable to plea agreements." Garcia v. State, 722 So.2d 905, 907 (Fla. 3d DCA 1998). A contract-based analysis of this case reveals two separate offers of record, one by the State of five years in prison with credit for time served since "the last time he was booked," and a second offer by the court of four years in prison that was silent as to what credit Reddix was required to waive until after Reddix accepted it. In order for us to affirm on consideration of this additional evidence, we would have to first infer that the proposed waiver in the State offer was imported into the court offer, and then infer that Reddix understood that to be the case. Such an analysis does not meet the requirement that a "waiver [of credit for time served] must be clearly shown on the record." Ryan, 837 So.2d at 1076.[3],[4]
*618 On remand, the trial court should further examine the record to determine whether some other document or evidence of record exists which clearly demonstrates Reddix was aware he would be waiving two years of credit for time served when he accepted the trial court's offer. See, e.g., Joyner, 988 So.2d at 671-72 (affirming where plea agreement signed by the defendant clearly indicated he was aware he would only be entitled to credit from a specific date); Rivera v. State, 954 So.2d at 1218 (affirming where "[granting] the requested additional credit here would reach an absurd result by undoing the amounts of time the defendant specifically agreed to serve"). If no such waiver can be shown or otherwise deduced, the court should enter an order crediting Reddix with the time served on the incarcerative portion of his original split sentence.[5]See Isaac, 992 So.2d at 304; Cozza, 756 So.2d at 272.
Reversed and remanded for further proceedings.
SUAREZ, J., concurs.
COPE, J. (dissenting).
Respectfully, I believe the transcript sufficiently supports the waiver of credit for time served prior to the last booking date.
This case came before the court for a probation violation hearing. The court inquired what plea offer had been made by the State. After a delay in the proceedings, the State said:
[ASSISTANT STATE ATTORNEY]: Yes, we were ready this morning. The State's offer is five (5) years state prison with credit time served since last time he was booked. I know there's a different court offer.
Over the next several pages it became clear that part of the negotiation involved the length of the sentence, and part of it involved which probation condition the defendant would admit that he violated. The defendant wished to agree to a ground which would not adversely affect him in a pending case against him in Broward County. None of the discussion between the parties and the court involved credit for time served.
At the end of the negotiation, it was agreed that the defendant would admit to committing a technical violation of probation and would receive a four-year sentence (instead of the five years the State had offered).
The judge stated:
Sentence will be four (4) years state prison with all credit for time served to which he is entitled since his booking date on these affidavits. That's the time that he gets credit for.
[ASSISTANT STATE ATTORNEY]: Your Honor, that's for the record verification, but taking the plea here means credit for time served only since the date he was booked on the violation of the probation.
THE COURT: That is what I just said.
(Emphasis added). There was no objection by the defendant or his counsel.
This colloquy is clear enough to document a waiver of credit for time served prior to the last booking date. Our court has said that "a provision in a plea agreement *619 that the defendant is to be awarded credit for time served from a specific date effectively waives any claim to credit for time served before that date." Johnson v. State, 974 So.2d 1152, 1152 (Fla. 3d DCA 2008), review stayed, No. SC08-418 (Fla. March 18, 2008); Joyner v. State, 988 So.2d 670, 672 (Fla. 3d DCA 2008). The transcript sufficiently reflects such a waiver. We should affirm.
NOTES
[1] Defendant's plea colloquy reveals the affidavit of probation violation also listed as a ground that Defendant was arrested on new charges in Broward County. As a result of negotiations between the trial court and counsel for both parties, however, Defendant was not required to plead to this arrest as a factual ground supporting his violation. Thus, we do not consider it here.
[2] In Rivera, this Court noted that:

The defendant's claim for an additional 732 days of credit for time served would mean that the defendant's incarceration would be limited to eleven monthswhich is totally inconsistent with the time frames to which the defendant previously agreed. An eleven-month term of incarceration would be less than the eighteen months required for the Modality Programwhich was the purpose of the downward departureand is less than the two and a half year estimated incarceration to which the defendant agreed.
Rivera, 954 So.2d at 1218.
[3] The cases cited by the dissent, Johnson v. State, 974 So.2d 1152 (Fla. 3d DCA 2008), and Joyner, 988 So.2d at 670, are inapposite. Both included written waivers of credit for time served.
[4] Our case is similarly distinguishable from our recent release, Holmes v. State, 11 So.3d 444 (Fla. 3d DCA 2009) (stating that defendant's express assent to proceed with plea colloquy after his counsel stated, "he [the defendant] just wants to be clear what he is getting credit for,") id. at 445 n. 1, "conclusively demonstrates that Holmes waived ... credit for any additional time served." Id. at 446.
[5] If it is not already included, it may be prudent for the criminal division of the circuit court to consider including an insert in any model colloquy form that may exist in that court a prompt or question to assure that a defendant who is accepting a plea offer expressly acknowledges of record that the offer excludes some or all credit for time served before he or she accepts the offer of a plea.